IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>DESHAWN WHITED, )<br>)<br>Defendant. ) | No. 3:21-CR-29-KAC-DCP |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant Deshawn Whited's Motion to Suppress all evidence seized from 4130 Lilac Ave on January 21, 2021, because (1) the affidavit fails to show a nexus between the residence and the charged crime and, thus, does not provide probable cause and (2) the affidavit contains materially false statements or material omissions that render the search unconstitutional [Doc. 56]. The Government filed its response in opposition [Doc. 66], and the Court held a hearing on Defendant's motion on July 6, 2022. Assistant United States Attorney ("AUSA") Alan Kirk appeared on behalf of the Government. Attorney Mark Brown represented Defendant Whited, who was also present. At the conclusion of the hearing, the Court took the matter under advisement.

After reviewing the parties' briefs and arguments, the search warrant affidavit, and the relevant legal authorities, the Court recommends that Defendant's Motion to Suppress based on lack of nexus and motion for a *Franks* hearing [Doc. 56] be **DENIED**.

## I. BACKGROUND

Defendant is charged [Doc. 2] with six counts of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951; one count of carjacking, in violation of 18 U.S.C. § 2119; seven counts of brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); and one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). A search warrant was obtained for 4130 Lilac Avenue, Knoxville, Tennessee ("4130 Lilac" or "the residence") by law enforcement on January 21, 2021, and included the affidavit of Officer Dylan M. Williams ("Williams") of the Knoxville Police Department, Violent Crimes Unit ("the Affidavit")[Doc. 66-1]. Law enforcement executed the search warrant on the same day and seized a pair of blue Nike shoes, a pair of black Adidas shoes, a black zip jacket, a black sweater, and a black backpack. *Id*.

## II. POSITIONS OF THE PARTIES

Defendant now moves [Doc. 56] to suppress all evidence seized from 4130 Lilac claiming the affidavit supporting the search warrant lacks probable cause to justify a search of the residence. First, Defendant argues that the Affidavit fails to establish a nexus between the property searched and the charged crime. [Doc. 56 p. 1]. He asserts that the only basis stated in the Affidavit that evidence of robberies would be located at 4130 Lilac is "a partial license plate beginning with '8W4' and that a Jeep Patriot with a license plate matching those three (3) letters was seen at 4130 Lilac" [*Id.* at 4]. Defendant maintains that the Affidavit provides nothing but vague detail to support the assertion than the Jeep Patriot is "very distinct" [*Id.*]. Defendant further argues that the Affidavit is lacking in other respects: no stated basis for knowledge supporting the assertion that the Jeep Patriot was consistently parked at 4130 Lilac; lack of background for knowledge

supporting statement that it was likely Defendant was staying at the residence;[1] and information that the vehicle was registered to that address is too vague and generalized to support a search warrant [*Id.*].

In addition, Defendant asserts that the Affidavit contains "either materially false statements, statements made with reckless disregard for the truth, or material omissions designed to deceive the issuing judge" [*Id.*]. He argues that "Williams provided the issuing judge with either misleading information or made a conscious decision not to provide all the relevant needed facts to obtain the search warrant" [*Id.* at 5]. Specifically, Defendant notes the following: Williams provides no basis for his parenthetical statement that tag 4P13V1 was stolen; Williams omitted that the victim of the sixth robbery, which occurred January 15, 2021 on Western Avenue, stated there were two suspected robbers; and throughout the Affidavit, Williams described the handgun used in the robberies as a "silver handgun," when the actual firearm recovered by law enforcement at the time of Defendant's arrest was primarily black with silver on the top [*Id.* at 5–6]. During the hearing, when the Court asked for a specific identification of the statements which Defendant alleged to be materially false or to be material omissions, he reiterated some of the above and added that Williams neglected to include in the Affidavit other critical information such as that the victim of the robbery on December 1, 2020, stated the suspect was a white male and that there is no explanation of how the vehicle description was determined.

---

[1] Given that one basis for Defendant's challenge to the search warrant is the alleged lack of information supporting Williams's statement that Defendant likely was staying at 4130 Lilac, the Court questioned whether Defendant had standing to challenge the search of the residence. The Government maintained that Defendant resided at 4130 Lilac, and Defendant's counsel responded that Defendant either consistently stayed at the residence or had a room there such that there is no question of his standing to challenge the search.

The Government responds [Doc. 66] first by stating that the Affidavit adequately provided the judicial magistrate with the requisite showing of probable cause to issue the search warrant. It states that the Affidavit demonstrates a nexus between the search of the residence and the robberies and carjacking based on the direct assertion that officers had been searching for a silver Jeep Patriot with a partial Tennessee license tag of "8W4," and the vehicle matching this make and model was located at the residence [Doc. 66 p. 5]. The Government further points to a statement in the Affidavit that the Jeep Patriot was seen at the residence in between the different robberies [*Id.*]. In response to Defendant's claims that the Affidavit contains materially false statements or material omissions that render the search unconstitutional, the Government states that Defendant has failed to put forth any evidence showing that Williams made any demonstrably false statements or material omissions in the Affidavit and has failed to make the requisite "strong preliminary showing" regarding Williams's supposed intent to mislead the court by excluding critical information from the Affidavit [*Id.* at 7–8].

### III. ANALYSIS

#### A. Probable Cause

Under the Fourth Amendment, there must be probable cause for a search warrant to issue, and the warrant must be based on facts that demonstrate "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)); *see also United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) ("An issuing judge may find probable cause to issue a search warrant when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'") (quoting *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005)). "To justify a search, the circumstances must indicate why evidence

4

of illegal activity will be found 'in a particular place.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.) (en banc), *cert. denied*, 543 U.S. 851 (2004). There must be a "nexus between the place to be searched and the evidence sought." *Id.* (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)).

In determining whether an affidavit establishes a nexus, the undersigned begins by observing that the issuing judge's determination that probable cause exists is entitled to "great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir.) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)), *cert. denied* 531 U.S. 907 (2000). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The "duty of a reviewing court is simply to ensure that the magistrate [judge] had a substantial basis for concluding that probable cause existed." *Id.* at 238–39. In making this determination, the Court considers only the information that was before the issuing judge, *i.e.* only what is contained within the four corners of the supporting affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir.), *cert. denied,* 560 U.S. 959 (2010); *see also Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971). An affidavit supporting the issuance of a search warrant should be reviewed in a commonsense, rather than hypertechnical, manner to determine probable cause. *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003).

In this case, Defendant argues that the Affidavit does not support a belief that evidence of the robberies would be found at 4130 Lilac. He maintains the only stated basis that evidence would be located at the residence is the partial plate identifier "8W4" and that a Jeep Patriot with a tag matching that partial identifier was seen at 4130 Lilac. Defendant also claims that the Affidavit

5

provides nothing but vague details to support the statement that the Jeep Patriot is "very distinct." He takes particular issue with certain information in the third paragraph of the Affidavit as demonstrating no basis of knowledge or support for the assertions that the Jeep Patriot was consistently parked at the residence or that it was likely Defendant was staying at the residence. Finally, Defendant asserts that "[t]he fact the vehicle was registered to that address is too vague and too generalized to support a search warrant for the Lilac Avenue address" [*Id.* p. 4].

Paragraph three of the Affidavit sets forth the following information about the suspected robberies and the search of 4130 Lilac:

> 3. My basis for believing that the evidence described herein will be found in the above stated location and that these records are evidence of said violation of criminal law are as follows:
>
> 1. Officers are investigating a string of armed robberies. The first incident occurred on 12/01/20 at 1400 Central St. The suspect was driving a silver Jeep, described as a Patriot, and had a silver handgun. The second robbery occurred on 12/12/20 at 6702 Clinton Hwy. The suspect was in a silver Jeep Patriot with a partial TN tag "8W4". The suspect had a silver handgun and the victim mentioned a tattoo next to the suspect's eye. The third robbery occurred on 1/12/21 at 8605 Walbrook Drive. The suspect was driving a silver Jeep Patriot with TN tag 4P13V1 (stolen tag). The suspect also had a silver handgun. The suspect was wearing dark blue over white shoes, a black toboggan, and a red bandanna.
>
> 2. The fourth attempted robbery occurred on 1/31/21 at 6230 Papermill Dr. The suspect had a silver handgun and was driving a silver Jeep Patriot. The suspect was again wearing dark blue over white shoes, a black toboggan, and a red bandanna. The 5th robbery occurred on 1/13/21 at 410 Merchant Dr. The suspect was driving a silver Jeep Patriot with TN tag 4P13V1 (stolen tag). The suspect had a silver handgun and was wearing dark blue over white shoes, a black toboggan, and a red bandanna. The sixth robbery occurred on 1/15/21 at 4407 Western Ave. The suspect was driving a silver Jeep Patriot and had a silver handgun. The suspect was wearing a red bandanna.
>
> 3. The seventh robbery occurred on 1/17/21 at 314 Lovell Rd. The suspect was driving a silver Jeep Patriot and had a silver handgun. The suspect

6

Case 3:21-cr-00029-KAC-DCP    Document 69    Filed 10/07/22    Page 6 of 17    PageID #: 347

was wearing dark blue over white shoes, a black toboggan, and a red bandanna.

…

5. Officers had been searching for the silver Jeep Patriot suspect vehicle and observed a silver Jeep Patriot backed in at 4130 Lilac Ave. The suspect vehicle is very distinct. It is a silver 2010-2016 Jeep Patriot with all of the windows tinted except for the front driver and passenger windows. It also has stock wheels, chrome door handles, and a black roof rack. The vehicle backed in at 4130 Lilac Ave. matched that description exactly.

6. Upon further inspection, the vehicle's tag was "8W40P5". The first three of the tag matched the description given by the victim in the attempted robbery at 6702 Clinton Hwy. The tag "8W40P5" comes back to a Carlenia Simmons. Investigation revealed that she has a son named Deshawn Whited who matches the given description of a light skinned black male with a tattoo next to his eye.

7. On 1/20/21 a carjacking occurred at Gay St. and Magnolia Ave. A silver 2001 Honda Accord was taken at gunpoint by a light skinned black male with a tattoo next to his eye. The suspect had a silver handgun. The victim in that case positively identified Deshawn Whited as the suspect when shown a lineup.

8. Officers then located the 2011 silver Jeep Liberty (tag 8W40P5) parked next to the stolen silver Honda Accord at the Kroger at 4414 Asheville Hwy. The suspect, Deshawn Whited was seen going back and forth between the vehicles before driving away in the Honda Accord. Officers blocked the vehicle in and took him into custody without incident. Also in the vehicle was a juvenile female, and on her person was a silver handgun which matched the one seen on security footage. Whited spontaneously uttered that everything in the vehicle was his, and during his interview he took possession of the firearm.

9. Affiant knows that the silver Jeep Patriot was consistently parked at 4130 Lilac Ave and that it is likely that the suspect was staying there. The Jeep was seen there in between several robberies and Affiant believes that evidence from the robberies will be located there. This includes clothing such as the red bandanna, blue shoes, and black toboggan frequently worn in the robberies. Affiant also believes other items associated with the robberies, such as the currency taken, will be located at 4130 Lilac Ave.

7

4. Your affiant states that based upon the facts set forth above that it is more likely than not that evidence described above is located at the residence described above, here in the City of Knoxville, County of Knox, State of Tennessee.

[Doc. 66-1, pp. 1–3]. The Affidavit also describes the evidence anticipated to be inside the residence, including such things as clothing—red bandana, blue shoes, and black toboggan worn during the robberies—firearms, and ammunition. [*Id.* at 1, 3].

Despite the lack of certain detail as alleged by Defendant, the Court must review the adequacy of the Affidavit based on the information contained within its four-corners and not on what may be lacking. *United States v. Allen,* 211 F.3d 970, 975 (6th Cir.2000) (stating than an affidavit must be judged "on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added"). The critical element is whether "there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *United States v. Brooks*, 594 F.3d 488, 492–93 (6th Cir. 2010) (citing *Frazier,* 423 F.3d at 532 (quoting *Zurcher v. Stanford Daily,* 436 U.S. 547, 556 (1978))).

Here, the Affidavit established that Williams had seven years' experience in law enforcement and was a member of the Violent Crimes Unit, having conducted numerous criminal investigations. The Affidavit further established that law enforcement officers had been investigating a string of armed robberies and detailed seven incidents that occurred between December 1, 2020, and January 17, 2021, all involving a suspect driving a silver Jeep Patriot and having a silver handgun. Several other details associated with the robberies were set forth in the Affidavit as follows: second robbery—a partial TN tag "8W4" for the Jeep Patriot was identified and the victim mentioned a tattoo next to the suspect's eye; third robbery—the Jeep Patriot had TN tag 4P13VI, which was noted as "(stolen tag)," and a description of the suspect's clothing was

provided (dark blue over white shoes, black toboggan, and red bandanna); fourth robbery—the same suspect clothing description was mentioned; fifth robbery—the same suspect clothing description and the same "stolen tag" 4P13VI were noted; sixth robbery—the suspect was described as wearing a red bandanna; and seventh robbery—the same suspect clothing description as provided in the third, fourth, and fifth robberies was detailed.

With regard to the vehicle for which law enforcement had been searching, the Affidavit described it as "a silver 2010-2016 Jeep Patriot with all of the windows tinted except for the front driver and passenger windows . . . stock wheels, chrome door handles, and a black roof rack" and stated that a vehicle matching that description was "backed in at 4130 Lilac." The Affidavit reviewed that upon inspection, the tag was identified as "8W40P5" and that investigation revealed it was registered to Carlenia Simmons and that she "has a son named Deshawn Whited, who matches the given description of a light skinned black male with a tattoo next to his eye." The Affidavit attested to the fact that the Jeep Patriot "was consistently parked at 4130 Lilac . . . and seen there in between several robberies" and stated that it is likely that the suspect was staying there and believed that evidence from the robberies will be located there. Finally, the Affidavit included information about a carjacking, which occurred on January 20, 2021, involving a silver 2001 Honda Accord being taken at gunpoint, where the victim positively identified Defendant as the suspect. The Affidavit went on to detail that the stolen Honda Accord was located in a parking lot next to a 2011 silver Jeep Liberty with tag 8W40P5 and that Defendant was seen going back and forth between the vehicles before driving away in the Honda Accord. Ultimately, the car was stopped and Defendant was taken into custody. It was noted that a juvenile female was also in the vehicle and that she had a silver handgun on her person, matching the one seen on security footage.

In evaluating the information contained within the four corners of the subject Affidavit, the Court finds sufficient probable cause to believe that evidence of the robberies would be found at the residence. The Affidavit indicates the Jeep Patriot was consistently parked at 4130 Lilac and specifically seen there in between several of the robberies. The Affidavit further provides specific information tying Defendant to the vehicle, including a victim's description of the robbery suspect driving a silver Jeep Patriot with a partial TN tag "8W4" and having a tattoo next to his eye, information that the tag "8W40P5" was registered to Defendant's mother, and Defendant himself observed going back and forth between the Jeep Patriot and the 2001 Honda Accord, which Defendant was identified as having carjacked. The information provided in the affidavit solidly connects the Defendant to the Jeep, the Jeep to the commission of the crimes, and places the Jeep at the residence. The question is whether this information—that Defendant is using a silver Jeep in the commission of the alleged crimes and the parking it at the residence, where he is believed to stay—is sufficient to establish that evidence of the crimes will be found in the residence.

The Sixth Circuit and other circuits have held that a court can infer a nexus based on the nature of the evidence sought and the type of offense that the defendant is suspected of having committed. *United States v. Sneed*, 385 F. App'x 551, 556 (6th Cir. 2010) (collecting cases). Moreover, the Sixth Circuit has readily acknowledged that an issuing judge may infer a nexus between a suspect and the residence, depending upon "the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008). Here, the Court can infer that that Defendant would keep articles of clothing used in the robberies at the Lilac Avenue residence, where he was believed to stay. The Court observes that similar shoes, hats, and bandanas were used in multiple robberies,

10

which indicates Defendant was retaining and reusing these items. Articles of clothing are commonly kept in one's residence.

In *Williams*, the Sixth Circuit held that a magistrate judge could infer that instrumentalities of criminal activity would be found at a defendant's residence where the affidavit contained information implicating the defendant in a robbery. *Id.* at 688. The Sixth Circuit specifically noted in *Williams,* "Much like a bank robber would keep the proceeds and instrumentalities of his robbery in his home, so too could Williams be expected to keep the instrumentalities of his criminal activity at his residence." *Id.* In this case, the Affidavit indicates that Defendant was suspected in certain robberies and that investigative details revealed that the vehicle matching the description of the one driven by the robbery suspect was seen consistently parked at 4130 Lilac and was seen at the residence in between several robberies. Like in *Williams*, the Court may infer that Defendant kept the instrumentalities of the robberies—the articles of clothing, the gun, and the proceeds—in the residence where he was believed to stay.

Defendant compares this case to *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016), in which the Court of Appeals held that an affidavit failed to "include facts that directly connect the [defendant's] residence with the suspected drug dealing activity[.]" *Brown*, 828 F.3d at 384. According to that court, "[i]t cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer." *Id.* A pattern of coming from and returning to one's residence in relation to drug transactions, however, can support an inference that evidence of drug trafficking will be found in the residence. *See, e.g.*, *United States v. Bucio-Cabrales*, 635 F. App'x 324, 334 (6th Cir. 2016) (concluding that evidence defendant traveled to his residence prior to narcotics sales supported inference he was storing narcotics at his residence); *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008) ("[T]he instant affidavit describes an incident

11

where law enforcement agents observed Defendant visiting his residence right before he traveled to the site of a drug sale. . . . This evidence, combined with the affiant's statements that he has significant experience in narcotics investigations, is sufficient to establish a nexus between Defendant's illegal activities and his residence."). Here, the Affidavit ties the 4130 Lilac address and the Jeep Patriot parked at the residence to several robberies and shows the Jeep was seen at the residence in between several of the robberies, giving officers sufficient probable cause to obtain a warrant to search the residence.

While Defendant argues that the Affidavit is lacking in further detail supporting certain stated information such as the Jeep Patriot is "very distinct" or explaining how officers knew certain information such as that tag 4P13V1 was stolen, that the Jeep Patriot was consistently parked at the residence, or that Defendant likely was staying at the residence, these criticisms do not detract from the probable cause analysis and elaborate specificity is not required. *See United States v. Ventresca*, 380 U.S. 102, 108 (1965) (recognizing that search warrant affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation and "[t]echnical requirements of elaborate specificity . . . have no proper place in this area"). Further, personal firsthand observations of an affiant government agent are not required for a supporting search warrant affidavit.[2] *See United States v. Harris*, 403 U.S. 573 (1971) (finding an affidavit for a

---

[2] The Sixth Circuit recognizes that officers may properly rely on information gained from other officers in the context of an investigatory detention:

> Variously called the 'collective knowledge' or 'fellow officer' rule, this doctrine recognizes the practical reality that 'effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another' . . . . we impute collective knowledge . . . even when the responding officer was wholly unaware of the specific facts that established reasonable suspicion for the stop.

12

search warrant may be based on hearsay). As noted by the Supreme Court in *United States v. Ventresca*, 380 U.S. 102, 111 (1965), "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *Ventresca*, 380 U.S. at 111; *see also id.* at 111 n.4 (collecting cases). Here, Williams recites in the Affidavit that "[o]fficers are investigating a string of armed robberies" and proceeds to detail the investigative findings resulting from each robbery, the license tags, the carjacking, and the observations of the Jeep Patriot at 4130 Lilac. Reading the Affidavit as a whole, the information recounted in it cannot be regarded as having been made in any significant part by persons other than law enforcement officers, and thus can be presumed reliable. *See id.* at 111.

In this case, the Affidavit contains sufficient probable cause to believe that evidence of robbery would be found at 4130 Lilac. As previously reviewed, the Affidavit indicates the silver Jeep Patriot was driven by the suspect in all seven robberies and observed consistently parked at 4130 Lilac, including times in between several of the robbery occurrences. The Sixth Circuit has readily acknowledged that it is appropriate for an issuing judge to infer that a robbery suspect keeps the instrumentalities or fruits of his criminal activity at his residence. *See Williams*, 544 F.3d at 690. Accordingly, based on a totality-of-the-circumstances review, the Affidavit provides a substantial basis for the issuing judge to have reasonably believed a search of the residence would uncover evidence of criminal activity.

---

States v. Lyons, 687 F.3d 754, 765–66 (6th Cir. 2012).

13

### B. Request for a *Franks* Hearing

Intertwined with his claims that the search warrant lacks probable cause is Defendant's implied request for a *Franks* hearing. He alleges that Williams "provided the issuing judge with either misleading information or made a conscious decision not to provide all the relevant needed fact to obtain the search warrant" [Doc. 56 p. 5]. Defendant highlights that Williams provides no basis for his parenthetical statement that tag 4P13V1 was stolen; Williams omitted that the victim of the sixth robbery on January 15, 2021, stated there were two suspected robbers; and throughout the Affidavit, Williams described the handgun used in the robberies as a "silver handgun," when the actual firearm recovered by law enforcement at the time of Defendant's arrest was primarily black with silver on the top. [*Id.* at 5–6]. He added at the hearing that Williams also neglected to include other critical information such as that the victim of the robbery on December 1, 2020, stated the suspect was a white male and fails to explain of how the vehicle description was determined.

"In a *Franks* hearing, a court determines whether to suppress the fruits of an executed search warrant, where the warrant was the result of a false statement." *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). "A defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). "[O]f course, a presumption of validity [exists] with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. To merit a *Franks* hearing, "a defendant must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" *Crawford*, 943 F.3d at 309 (quoting *Franks*, 438 U.S. at 171). An officer's statement is only considered to be issued with "reckless disregard for the truth" if the

14

Case 3:21-cr-00029-KAC-DCP    Document 69    Filed 10/07/22    Page 14 of 17
PageID #: 355

defendant shows the affiant subjectively entertained "serious doubts as to the truth" of his allegations. *Bateman*, 945 F.3d at 1008 (6th Cir. 2019). "Allegations of [an officer's] negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171. "The allegedly false statement, moreover, must be necessary to the finding of probable cause." *Id.* (internal quotations omitted). As warrant affidavits "carry with them 'a presumption of validity,'" the challenger's attack "must be more than conclusory." *United States v. Stuart*, 507 F.3d 391, 396 (6th Cir. 2007) (quoting *Franks*, 438 U.S. at 171). In other words, the movant must point to specific false statements and "accompany his allegations with an offer of proof," typically in the form of supporting affidavits. *United States v. Bennett*, 905 F.3d 931, 934 (6th Cir. 1990).

Here, Defendant does not meet the requisite threshold for a *Franks* hearing by making the general assertion that Williams provided "either misleading information or made a conscious decision not to provide all the relevant needed fact to obtain the search warrant." Defendant has failed to show, through affidavits or otherwise, or to even allege that any statements contained in the Affidavit were deliberately false or made with reckless disregard for the truth. For example, while Defendant argues Williams provides no explanation for his parenthetical statement that tag 4P13V1 was stolen, he also fails to provide any offer of proof that this information is false. In addition, he claims that throughout the Affidavit, Williams described the handgun used in the robberies as a "silver handgun," when the actual firearm recovered by law enforcement at the time of Defendant's arrest was primarily black with silver on the top. Again, Defendant provides no support, through affidavit or otherwise, for his conclusory argument suggesting any falsity as to this statement. Defendant's mere suggestion that there may have been some misleading information does not constitute a substantial preliminary showing of knowing of intentional recklessness by Williams.

15

With respect to any "material omissions" identified by Defendant, "there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) (citing *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001) (citations omitted). The Sixth Circuit has explained that a higher standard is necessary for omissions because of the "'potential for endless rounds of *Franks* hearings' due to potentially 'endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to the defendant's benefit.'" *Id.* at 425–26 (quoting *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990)). Moreover, affiants "cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998) (quoting *United States v. Colkley,* 899 F.2d 297, 302 (4th Cir.1990)).

Defendant cannot meet this high bar as to the three alleged omissions: the victim of the December 1, 2020 robbery stating the suspect was a white male; the victim of the sixth robbery stating there were two suspected robbers; and any explanation of how the vehicle description was determined. According to Defendant, Williams misled the issuing judge by failing to add this information to the Affidavit, generally stating that without the omitted facts, "the Magistrate could not fulfill its neutral and detached duty" [Doc. 56 p. 7]. However, Defendant's identification of these omissions is vague, and he makes no effort to prove that Williams engaged in deliberate or reckless disregard of the truth by omitting this information. Moreover, Defendant fails to establish or even assert that the inclusion of the allegedly omitted facts would tend to defeat probable cause. Defendant's allegation that Williams misled the issuing judge is simply too conclusory to constitute the substantial showing required under *Franks,* and because Defendant has failed to

16

make the requisite "substantial preliminary showing," the Court recommends denying his request for a *Franks* hearing.

IV. **CONCLUSION**

Because the search warrant was supported by probable cause and Defendant has not made the proper showing to warrant a *Franks* hearing, the Court recommends that Defendant's Motion to Suppress based on lack of nexus and motion for a Franks hearing [Doc. 56] be **DENIED**.[3]

RESPECTFULLY SUBMITTED,

Debra C. Poplin
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).